**2025 WI 7**

# Supreme Court of Wisconsin



OFFICE OF LAWYER REGULATION,
*Complainant-Respondent,*

*v.*

VLADIMIR M. GOROKHOVSKY,
*Respondent-Appellant.*

No. 2022AP183-D

Decided March 5, 2025

ATTORNEY DISCIPLINARY PROCEEDING

¶1     PER CURIAM. Vladimir M. Gorokhovsky has appealed a referee's recommendation that his license to practice law in Wisconsin be revoked, that he be ordered to pay restitution to two former clients, and that he be ordered to pay the full costs of this proceeding, which are $14,358.12 as of February 17, 2025. After careful review of the matter, we agree that Attorney Gorokhovsky's license to practice law in Wisconsin should be revoked. We also agree with the referee's recommendation that Attorney Gorokhovsky be required to pay restitution and that he also be required to pay full costs.

¶2     Attorney Gorokhovsky was admitted to practice law in Wisconsin in 2002 and has an office in Grafton, Wisconsin. Attorney Gorokhovsky's disciplinary history consists of:

(a)     A private reprimand for charging an unreasonable fee, trust account violations, failing to refund to his clients any portion of an advanced fee, and failing to provide

accurate information to the Office of Lawyer Regulation (OLR) during an investigation. Private Reprimand 2009-23.

(b)     A public reprimand for failing to provide competent representation to a client, failing to consult with a client and abide by a client's decisions concerning the objectives of the representation, failing to keep a client reasonably informed and promptly comply with the client's reasonable requests for information, accepting compensation for legal services from someone other than a client without obtaining the client's prior consent, having a compensation agreement that interfered with his independent professional judgment and with the lawyer-client relationship, discussing a client's case with the party paying for his legal services without the client's consent and allowing that party to make decisions about the representation, misrepresenting to the OLR the date of a letter he allegedly sent to a client, and charging an unreasonable fee. *In re Disciplinary Proceedings Against Gorokhovsky*, 2012 WI 120, 344 Wis. 2d 553, 824 N.W.2d 804.

(c)     A 60-day suspension for engaging in criminal conduct and making false statements to a court. *In re Disciplinary Proceedings Against Gorokhovsky*, 2013 WI 100, 351 Wis. 2d 408, 840 N.W.2d 126.

(d)     A private reprimand for falsely answering a judge's questions at a plea hearing. *In re Disciplinary Proceedings Against Gorokhovsky¸* Wis. Sup. Ct. Case No. 2017AP1237-D (June 17, 2020 unpublished order).

On March 25, 2022, OLR filed an amended complaint against Attorney Gorokhovsky alleging 18 counts of misconduct. Attorney Gorokhovsky filed an answer on March 30, 2022. On June 3, 2022, OLR filed a motion for summary judgment. On September 12, 2022, the referee[1]

---

[1] Referee Robert E. Kinney was appointed on March 25, 2022, and ruled on the motion for summary judgment. Referee Kinney subsequently withdrew, and

granted OLR judgment on the pleadings as to counts one, two, and four through six of the amended complaint and granted summary judgment as to count three. All of these counts pertained to litigation in which Attorney Gorokhovsky either participated pro se or represented himself and a co-plaintiff.

¶3      An evidentiary hearing was held before the referee on May 8 and 9, 2023. The referee filed his report and recommendation on July 26, 2023. The referee found that OLR had presented clear, satisfactory, and convincing evidence that Attorney Gorokhovsky committed all of the counts of misconduct alleged in OLR's amended complaint.

¶4      The first seven counts of misconduct alleged in the amended complaint arose out of lawsuits in which Attorney Gorokhovsky participated either as a pro se plaintiff or defendant. We will briefly summarize each of those cases.

Eastern District of Wisconsin Case Against E.S.

¶5      On March 28, 2019, Attorney Gorokhovsky filed suit against E.S., a resident of New York State, in Federal Court for the Eastern District of Wisconsin. Attorney Gorokhovsky's complaint alleged that E.S. was a former client who defamed him. Attorney Gorokhovsky subsequently filed an amended complaint adding Igor K. as a plaintiff and asserting additional claims on Igor K.'s behalf arising out of a separate, unrelated matter between Igor K. and E.S.

¶6      On July 9, 2019, in response to a motion to dismiss, Attorney Gorokhovsky filed various documents, including emails between him and E.S. E.S. had not waived attorney-client privilege for those materials.

¶7      On July 31, 2019, Judge J.P. Stadtmueller dismissed Attorney Gorokhovsky's suit for lack of personal jurisdiction. On August 5, 2019, Attorney Gorokhovsky moved for sanctions against E.S. "for making and submitting to this Court of [sic] perjurious statement." Attorney Gorokhovsky again submitted attorney-client privileged emails in his filing. On August 13, 2019, Judge Stadtmueller denied Attorney

Referee James D. Friedman was appointed on March 29, 2023, and presided over the remainder of the case.

Gorokhovsky's motion for lack of jurisdiction. The court further noted Attorney Gorokhovsky's inappropriate resubmission of the privileged emails and warned, "If Gorokhovsky continues to submit documents in violation of the attorney-client privilege, the Court will order him to show cause as to why he has not violated Federal Rule of Civil Procedure Rule 11(b)."

¶8      On August 20, 2019, Attorney Gorokhovsky filed a notice of appeal in the Seventh Circuit Court of Appeals on behalf of himself and Igor K. Attorney Gorokhovsky was not admitted to practice before the Seventh Circuit and thus could not represent Igor K. in the appeal. Igor K. did not file a separate appeal. Along with the notice of appeal, Attorney Gorokhovsky filed a deficient docketing statement. Due to multiple deficiencies, Attorney Gorokhovsky had to submit three more docketing statements before finally complying with applicable court rules.

¶9      On September 27, 2019, Attorney Gorokhovsky moved to extend the September 30, 2019 deadline for him to file a brief due to unspecified health problems. Although claiming ill health prevented him from completing his brief, on September 26 and September 30, 2019, Attorney Gorokhovsky appeared in person in Milwaukee County circuit court, representing himself on a traffic citation.

¶10     The Seventh Circuit granted Attorney Gorokhovsky an extension to October 15, 2019, to file his brief. On October 12, 2019, Attorney Gorokhovsky filed a deficient brief. The clerk's office ordered him to file a corrected brief within seven days. On October 15, 2019, Attorney Gorokhovsky filed a motion seeking a fourteen-day extension to file a corrected brief, saying that he had been unable to view the clerk's deficiency notice. He subsequently filed two more extension motions on the grounds that he had not received or could not access the clerk's deficiency letter. On November 4, 2019, the court granted Attorney Gorokhovsky an extension to November 18, 2019, to file his corrected brief. He filed the corrected brief the same day.

¶11     On November 6, 2019, the court, on its own initiative, issued an order stating that because Attorney Gorokhovsky could not represent Igor K. in the case since Attorney Gorokhovsky was not admitted to practice before the court. Igor K. had to either sign Attorney Gorokhovsky's brief or file his own brief.

¶12 On November 12, 2019, Attorney Gorokhovsky moved for permission for him and Igor K. to file a joint brief. The court granted the motion, struck Attorney Gorokhovsky's previous brief, and set a November 25, 2019 deadline for him to file a rule-compliant brief signed by both him and Igor K.

¶13 Attorney Gorokhovsky resubmitted the brief on November 22, 2019. In filing the brief, Attorney Gorokhovsky certified that it was under 30 pages, that the appendix met the Rule 30(a) requirements, and that the paper briefs he filed were identical to the electronic brief he filed. Attorney Gorokhovsky did not number eight of the pages that were subject to the page limit, which caused the clerk's office to believe his certification.

¶14 When filing the brief on November 22, 2019, Attorney Gorokhovsky moved the court for additional time to mail the required paper copies. After giving Attorney Gorokhovsky further extensions on alleged health grounds, the court received the paper copies of the brief on December 26, 2019. Most of the paper copies did not have the required short appendix. In addition, the paper briefs had alterations in the footnotes, formatting, and dates in some of the certifications.

¶15 Although continuing to claim that ill health prevented him from complying with the federal court's filing deadlines, on October 30 and November 14, 2019, Attorney Gorokhovsky had appeared in person in Milwaukee County circuit court, representing himself on traffic citations. On December 18, 2019, he appeared in person in Federal Court for the Eastern District of Wisconsin in connection with a tax lien case.

¶16 On January 22, 2020, the court allowed E.S.'s counsel to withdraw. E.S. did not file a brief, and the court considered the appeal without her participation.

¶17 On August 28, 2020, the Seventh Circuit affirmed the district court's dismissal of Attorney Gorokhovsky's suit. The court declined to consider the merits of the appeal because of multiple false certifications Attorney Gorokhovsky had made in documents filed in connection with the appeal, his failure to furnish required documents, and his "marginally competent" documents. The court struck the appellants' brief for failing to comply with court rules, summarily affirmed the judgment as a sanction, and ordered Attorney Gorokhovsky to show cause why he should not be further sanctioned. The court found that by purporting to represent Igor K.,

Attorney Gorokhovsky had engaged in the unauthorized practice of law since he was not admitted to practice before the Seventh Circuit.

¶18    On September 8, 2020, Attorney Gorokhovsky responded to the order to show cause by apologizing and noting that English is not his native language.

¶19    On October 13, 2020, the Seventh Circuit censured Attorney Gorokhovsky for "dishonest and incompetent practice of law" and fined him $5,000.

¶20    On October 19, 2020, Attorney Gorokhovsky filed a document which the Seventh Circuit construed as a petition for rehearing. The court denied the petition.

¶21    On November 15, 2020, Attorney Gorokhovsky filed a second motion opposing the Seventh Circuit's order. The court declined to take any action on the successive motion since it was not allowed.

¶22    By October 6, 2021, Attorney Gorokhovsky had not yet paid the fine imposed by the court. The Seventh Circuit issued an order stating that "[u]nless and until Vladimir Gorokhovsky pays his fine and any outstanding filing fees, the clerks of all federal courts in this circuit are directed to return unfiled any papers submitted either directly or indirectly by him or on his behalf." Attorney Gorokhovsky paid the $5,000 fine on October 12, 2021. The filing bar remained in place until November 23, 2021, when the Seventh Circuit issued an order restoring Attorney Gorokhovsky's ability to practice in the district courts of the Seventh Circuit.

<u>Southern District of New York Case Against E.S.</u>

¶23    On August 29, 2019, Attorney Gorokhovsky filed a second lawsuit against E.S., with himself and Igor K. as plaintiffs, in Federal Court for the Southern District of New York. Federal rules required him to serve E.S. within 90 days. On October 17, 2019, Attorney Gorokhovsky requested the issuance of a summons. On October 27, 2019, he filed an amended complaint. On November 15, 2019, the court denied Attorney Gorokhovsky's request for a summons because his pleading was deficient.

¶24 On November 21, 2019, Attorney Gorokhovsky again requested a summons. Due to deficiencies in his filings, the court denied this request and three subsequent requests made over the next few months.

¶25 On May 11, 2020, the court dismissed the case for lack of prosecution. The order allowed the plaintiffs until June 10, 2020, to restore it. Attorney Gorokhovsky filed a joint motion to restore the case saying that he had suffered a heart attack on March 3, 2020, had open heart surgery, and was recovering. He also said that Igor K. was in Russia and unable to travel due to the COVID-19 pandemic and did not have access to PACER.

¶26 On May 12, 2020, the court ordered the case restored and granted the plaintiffs leave to request a summons but noted "such leave to request a summons does not constitute a ruling by the Court on the timeliness, adequacy, or merits of service."

¶27 On May 12, 2020, Attorney Gorokhovsky filed a summons request, then corrected it the following day. On May 18, 2020, the court issued a summons. On May 20, 2020, service on E.S. was made by leaving the summons with the doorman at the building where she purportedly resided. E.S. did not file an answer.

¶28 On July 26, 2020, Attorney Gorokhovsky moved for default judgment. The court denied the motion without prejudice because the document did not comply with court rules requiring that a certificate of default be obtained from the clerk of court before pursuing a default judgment. On August 19, 2020, Attorney Gorokhovsky filed a deficient request for the clerk of court to issue a default judgment. After he filed a corrected request, the clerk issued the certificate of default on August 27, 2020. Attorney Gorokhovsky again moved for default judgment on November 27, 2020.

¶29 On April 16, 2021, the court ordered Attorney Gorokhovsky and Igor K. to show cause why the case should not be dismissed due to their failure to timely serve E.S.

¶30 On April 19, 2021, Attorney Gorokhovsky filed a letter in response to the order to show cause as well as a pleading titled "Declaration of Vladimir Gorokhovsky." In the letter and declaration, Attorney Gorokhovsky said he had been ill from September 2019 through the end of April 2020, "suffering from severe and disabling diabetics conditions and other related illnesses and impediments, severely impeding his ability to

work and to function." He also said he had suffered a heart attack on March 3, 2020. On May 12, 2021, the court received a letter from Igor K. repeating that Attorney Gorokhovsky was ill between September 2019 and the end of April 2020.

¶31    On August 11, 2021, the court ordered Attorney Gorokhovsky and Igor K. to appear at a hearing on the default judgment motion on September 8, 2021. On August 20, 2021, Attorney Gorokhovsky and Igor K. filed a new motion for default judgment against E.S. On August 23, 2021 they filed an amended version of the default motion. As of November 2, 2021, the case was still pending.

<u>Eastern District of Wisconsin Case Against Gorokhovsky</u>

¶32    On April 16, 2018, the United States of America (U.S.) initiated a civil action against Attorney Gorokhovsky to enforce tax liens for debts he owed to the Internal Revenue Service (IRS) for tax years 2003-04, 2006-08, and 2010-16. The complaint named other defendants, including Gorokhovsky Imports and Investment Group (GIGG), which Attorney Gorokhovsky owned and represented in the proceeding. The court set an initial discovery deadline of September 13, 2019. In addition, initial disclosures required under Rule 26 were ordered to be exchanged by March 8, 2019. Attorney Gorokhovsky did not provide his Rule 26 disclosures by the deadline or thereafter.

¶33    On March 15, 2019, the U.S. served discovery requests on Attorney Gorokhovsky. Attorney Gorokhovsky did not provide his responses when due. The U.S. contacted him several times to obtain his response. He finally responded to the discovery requests on June 16, 2019. The U.S. found the response to be deficient in numerous respects and contacted Attorney Gorokhovsky to schedule a time to meet and confer. At Attorney Gorokhovsky's request, the U.S. specified its objections in writing in advance of their scheduled telephone conference on July 10, 2019. Attorney Gorokhovsky nonetheless told counsel for the U.S. that he was not prepared when they spoke on July 10, 2019, and that he was suffering a medical emergency.

¶34    On July 12, 2019, the U.S. moved to compel discovery. Attorney Gorokhovsky filed an objection to the motion to compel and a separate motion for protective order to limit discovery. He included a declaration saying that he had been hospitalized on January 11, 2019, with

"severe diabetic coma condition" and offered health reasons for his inability to comply with the discovery requests.

¶35    While awaiting the court's ruling on the motion to compel, the U.S. filed motions to extend the discovery deadlines and to refer the discovery disputes and future non-dispositive pretrial matters to a magistrate judge.

¶36    On December 3, 2019, the district court issued an order addressing all pending motions. It granted the U.S.'s motion to refer discovery disputes and future non-dispositive pretrial matters to a magistrate judge. The court denied as moot Attorney Gorokhovsky's amended motion for a protective order.

¶37    On December 5, 2019, the court referred the case to Magistrate Judge William Duffin for pending discovery-related motions and future non-dispositive pretrial matters. On December 10, 2019, Judge Duffin scheduled a hearing for December 18, 2019, on the discovery motions and ordered that Attorney Gorokhovsky appear in person.

¶38    On December 18, 2019, Attorney Gorokhovsky appeared in person, but arrived late. He cited his health problems as an excuse for his failure to file the initial disclosures as well as why he had cancelled scheduled meetings with the U.S. Judge Duffin ordered Attorney Gorokhovsky to file his initial disclosures by January 10, 2020, ordered the U.S. to inform Attorney Gorokhovsky by letter of the information requested that it had already obtained and no longer needed, and ordered Attorney Gorokhovsky and GIGG to respond to discovery and produce the remaining documentation by January 31, 2020. Judge Duffin also reset the discovery deadline for April 8, 2020, and reset the dispositive motion deadline for May 8, 2020.

¶39    The U.S. twice more moved for enlargement of the discovery and dispositive motion deadlines, citing Attorney Gorokhovsky's failure to provide information, his opposition to being deposed, and the COVID-19 pandemic.

¶40    On June 10, 2020, Judge Duffin entered an order allowing remote depositions. Attorney Gorokhovsky did not file an objection to the order within the 14 days allowed by Fed. R. Civ. P. 72(a). On June 15, 2020, he filed two redundant, confusing pleadings that the court subsequently construed as motions for protective orders. Among the requests were that

Judge Duffin's order be vacated, that dispositive motions not be referred to Judge Duffin, and that protective orders be entered to prevent depositions scheduled for August 4 and 5, 2020.

¶41    On July 26, 2020, Attorney Gorokhovsky filed another document seeking review of Judge Duffin's June 10, 2020 order. This document was docketed as a motion for a protective order. Attorney Gorokhovsky again cited his ill health as a reason why he could not file a brief or appear for a deposition.

¶42    On August 5, 2020, Attorney Gorokhovsky did not appear for his remote deposition. That same day, District Court Judge Pamela Pepper issued a written decision addressing the pending motions. Judge Pepper denied Attorney Gorokhovsky's motions for a protective order in his initial responses to the extent he intended his responses to constitute motions. She also denied, as untimely, his request to vacate Judge Duffin's order. Judge Pepper also rejected Attorney Gorokhovsky's assertions that he was too ill to file pleadings or be deposed since he had filed numerous pleadings and had recently filed another lawsuit assigned to that court.

¶43    On August 21, 2020, the U.S. filed motions for sanctions against Attorney Gorokhovsky. On September 1, 2020, Judge Duffin granted the motions. The order prohibited Attorney Gorokhovsky from introducing evidence and/or testimony about certain subjects. The court also awarded attorney's fees and expenses to the U.S., which were later determined to be $17,581.60.

¶44    Attorney Gorokhovsky filed an objection to the sanction award and moved for Judge Duffin's recusal. Judge Duffin denied the recusal motion as having no basis. Attorney Gorokhovsky filed an objection to the denial of the recusal motion.

¶45    On October 5, 2020, the U.S. moved for summary judgment. Attorney Gorokhovsky's response to the motion was due within 30 days. On October 30, 2020, Attorney Gorokhovsky sought an extension of time to respond to the motion based on the large volume of motion papers and his own health issues. On November 19, 2020, the court granted Attorney Gorokhovsky an extension to December 21, 2020, "[d]espite his failure to follow local rules."

¶46    On December 19, 2020, Attorney Gorokhovsky filed a motion requesting a further 30-day extension of his response deadline, again citing

the volume of the motion documents and his health problems. The court, while noting its reluctance to do so, granted the request for an extension to January 21, 2021. The court informed Attorney Gorokhovsky that the extension would be his last and that if he did not comply the court would decide the summary judgment motion based on the U.S.'s filing alone.

¶47    On January 21, 2021, Attorney Gorokhovsky filed his response to the summary judgment motion.

¶48    On February 11, 2021, the U.S. sent Attorney Gorokhovsky a letter demanding payment of the sanction ordered by the court on September 1, 2020. Attorney Gorokhovsky did not respond or pay the sanction. On May 17, 2021, the U.S. filed a motion requesting the court to set a deadline for Attorney Gorokhovsky to comply with the court order by paying the sanction.

¶49    On May 25, 2021, Attorney Gorokhovsky filed a response saying he had COVID-19 and had no income but intended to comply with the order after he recovered. On June 9, 2021, the court ordered Attorney Gorokhovsky to file "an affidavit or declaration from his doctor updating the Court on the status of his health and his prognosis" prior to a July 15, 2021 hearing on the unpaid sanctions. On July 12, 2021, Attorney Gorokhovsky filed a motion seeking an extension to comply with the June 9 order.

¶50    On July 14, 2021, the court rejected Attorney Gorokhovsky's objections to the sanctions order. It granted Attorney Gorokhovsky's request for additional time to document his health status and rescheduled the hearing for September 2, 2021. The court gave Attorney Gorokhovsky until September 1, 2021, to document his health status via a sworn statement from a treating medical professional. On August 31, 2021, Attorney Gorokhovsky filed an unsworn letter from his doctor, which did not say he had tested positive for COVID-19.

¶51    On September 7, 2021, Judge Ludwig granted the U.S's request for a deadline by which Attorney Gorokhovsky must pay the sanctions, requiring him to do so by October 7, 2021. On October 6, 2021, Attorney Gorokhovsky moved for an extension of time to pay the sanctions. The court denied the motion.

¶52    On December 10, 2021, the court entered an order granting summary judgment in favor of the U.S. and directing the clerk of the court

to enter final judgment against Attorney Gorokhovsky. The court found that Attorney Gorokhovsky had "hamstrung the proceedings through meritless motions, excessive malingering, and bad faith excuses."

### Northern District of Illinois Case Against Gorokhovsky

¶53     On May 16, 2018, the U.S. initiated a separate federal action to enforce its tax lien against a condominium in Chicago owned by Attorney Gorokhovsky. On October 16, 2018, the U.S. served its first discovery request on Attorney Gorokhovsky seeking production of documents relating to the ownership of the condominium. Attorney Gorokhovsky did not respond and did not file his initial discovery disclosures as required by court rule.

¶54     On December 11, 2018, the U.S. conferred with Attorney Gorokhovsky about his failure to comply with discovery, and he said he would provide his responses. As of February 7, 2019, Attorney Gorokhovsky had not complied with the discovery requests, and the U.S. filed a motion to compel. On February 10, 2019, Attorney Gorokhovsky filed an emergency motion for an adjournment, citing his medical problems. The court denied the motion but allowed Attorney Gorokhovsky to appear by telephone.

¶55     On February 12, 2019, Attorney Gorokhovsky did not appear for the hearing, either in person or by telephone. The court granted the motion to compel and set a deadline of February 28, 2019, for Attorney Gorokhovsky to produce his outstanding discovery responses and initial disclosure documents. He did not do so.

¶56     On March 18, 2019, the U.S. moved for sanctions against Attorney Gorokhovsky. On March 21, 2019, the court held a hearing on the sanction motion but continued the motion to April 9, 2019. While the court ordered Attorney Gorokhovsky to respond to the motion by April 4, 2019, he did not do so.

¶57     On April 9, 2019, the court again held a hearing on the motion. It noted Attorney Gorokhovsky's lack of response and continued the hearing on the sanction motion to April 30, 2019. The court gave Attorney Gorokhovsky until April 19, 2019, to respond.

¶58     On April 30, 2019, the court heard the sanction motion. Attorney Gorokhovsky failed to appear. The court granted the motion,

ordered Attorney Gorokhovsky's answer to the complaint be stricken, and entered default judgment against Attorney Gorokhovsky as a sanction.

¶59     Approximately one year later, the court authorized the sale of the Chicago condominium.

Gorokhovsky's Suit against the City of Chicago

¶60     On April 13, 2018, Attorney Gorokhovsky and his son travelled to Chicago and had dinner at a restaurant. During that time, the City "booted" Attorney Gorokhovsky's car for unpaid parking tickets and transported it to an impound lot. Attorney Gorokhovsky paid the $766 he owed the City, but City employees were not available to remove the boot and release the vehicle so Attorney Gorokhovsky and his son spent the night in a hotel.

¶61     On April 19, 2018, Attorney Gorokhovsky sued the City, alleging that it violated his and his son's civil rights when it impounded his car. Attorney Gorokhovsky filed an amended complaint on May 15, 2018. On July 24, 2018, he filed a second amended complaint seeking class action status.

¶62     The City moved to dismiss the case on the basis that Attorney Gorokhovsky had not stated a claim for which relief could be granted and that he lacked standing to pursue the claimed injury. On September 1, 2018, Attorney Gorokhovsky filed his response to the motion to dismiss. He did not, however, appear for the status hearing on September 10, 2018, either in person, as ordered by the court, or by telephone.

¶63     On March 18, 2019, the court granted the City's motion and dismissed Attorney Gorokhovsky's suit with prejudice, finding that he lacked standing.

¶64     On March 19, 2019, Attorney Gorokhovsky filed an appeal to the Seventh Circuit. In the course of the appeal, Attorney Gorokhovsky filed four motions seeking extensions of time to file his opening brief. On October 22, 2019, Attorney Gorokhovsky filed the brief electronically and immediately moved the court for an extension to mail paper copies of the brief. The Seventh Circuit gave Attorney Gorokhovsky two extensions of time to correct deficiencies in his brief and mail paper copies, which was completed by December 19, 2019.

¶65    On January 21, 2020, the City filed its response brief. On February 10, 2020, Attorney Gorokhovsky moved for an extension of time to file his reply brief on the basis that the City had not sent him a paper copy of its brief. He subsequently filed for three more extensions on different grounds: lack of a paper copy of the City's brief, a recent heart attack, and the COVID-19 crisis.

¶66    On May 11, 2020, the Seventh Circuit affirmed the dismissal of Attorney Gorokhovsky's lawsuit, finding that "the federal claims were wholly insubstantial and frivolous" and did not raise federal subject matter jurisdiction.

<u>Gorokhovsky v. State Public Defender's Office</u>

¶67    On March 2, 2020, the Wisconsin State Public Defender's Office (SPD) received an application from Attorney Gorokhovsky seeking recertification for misdemeanor appointments. On June 15, 2020, the SPD rejected the application and detailed the reasons for its decision in a letter emailed to Attorney Gorokhovsky that day. On June 26, 2020, Attorney Gorokhovsky appealed the decision to the Public Defender Board.

¶68    On July 18, 2020, Attorney Gorokhovsky filed a civil suit in Federal Court for the Eastern District of Wisconsin naming as defendants the SPD and Kathleen Pakes, the Director of the SPD's Assigned Counsel Division. The complaint alleged that Attorney Gorokhovsky had submitted an application to the SPD's Assigned Counsel Division seeking to be recertified to accept appointments to represent indigent defendants in misdemeanor cases. The complaint alleged that the SPD returned the application, as well as Attorney Gorokhovsky's resubmission of it in January 2020. During the timeframe that Attorney Gorokhovsky submitted those applications, he was reporting to various courts that he was unable to meet deadlines and needed extensions because of his ill health.

¶69    The case was assigned to District Court Judge Pamela Pepper. Attorney Gorokhovsky moved for Judge Pepper's substitution but cited no rule, authority, or facts in support of the motion and did not file a supporting memorandum as required by local rules. The court denied the motion.

¶70    On July 30, 2020, the SPD and Pakes moved to dismiss. Attorney Gorokhovsky's response to the motion was due 21 days later. On September 9, 2020, Attorney Gorokhovsky filed his response, claiming he

did not receive the copy mailed to him by the defendants until September 9, and that the clerk's office had told him he could not use his PACER account to e-file the response.

¶71  On September 9, 2020, the defendants filed a reply brief in support of their motion to dismiss asserting that Attorney Gorokhovsky had waived his opposition to several of their bases for dismissal because his brief did not address them. On September 14, 2020, Attorney Gorokhovsky filed a sur-reply brief, contrary to local court rules and the Federal Rules of Civil Procedure. He addressed the defendants' arguments for dismissal that he had neglected to address in his first brief.

¶72  On January 5, 2021, Judge Pepper issued a decision addressing the various pleadings filed by Attorney Gorokhovsky and granting the SPD's motion to dismiss. Judge Pepper determined that dismissal of the case was appropriate because the Eleventh Amendment barred his suit against the SPD and because Pakes had not deprived him of any protected liberty or property right by refusing to certify him for SPD appointments.

¶73  On February 16, 2021, Attorney Gorokhovsky filed suit against the SPD and the Board of the SPD in Milwaukee County Circuit Court. On January 22, 2022, the circuit court affirmed the SPD's administrative decision and dismissed Attorney Gorokhovsky's suit.

¶74  The OLR's amended complaint alleged the following counts of misconduct arising out of the cases in which Attorney Gorokhovsky was a party:

> **Count One:** By failing in multiple instances to abide by local court rules and by the Federal Rules of Appellate Procedure, Attorney Gorokhovsky violated SCR 20:3.4(c).

> **Count Two**: By falsely certifying to the Court of Appeals for the Seventh Circuit that his brief met page limit requirements, that the appendix he filed met Rule 30 requirements, and that his paper briefs were identical to his e-filed briefs, Attorney Gorokhovsky violated SCR 20:3.3.(a)(1).

> **Count Three**: By leaving pages of his brief unnumbered, which caused the clerk's office to believe that his brief met the

page limit criteria of Fed. R. App. P. 31(a)(7), Attorney Gorokhovsky violated SCR 20:8.4(c).

**Count Four**: By representing Igor K. before the Seventh Circuit when he had been denied admission to practice before it, Attorney Gorokhovsky violated SCR 20:5.5(a)(1).

**Count Five:** By failing to submit initial disclosures and failing to comply with discovery orders, leading to sanctions against him, Attorney Gorokhovsky violated SCR 20:3.4(c).

**Count Six:** By failing to comply with discovery requests, including failing to appear for duly noticed depositions, Attorney Gorokhovsky violated SCR 20:3.4(d).

**Count Seven:** By misrepresenting on multiple occasions that his health prevented him from meeting deadlines and complying with court rules an orders, Attorney Gorokhovsky violated SCR 20:8.4(c).

¶75    The next eight counts of misconduct alleged in the amended complaint arose out of Attorney Gorokhovsky's representation of Inna K. Inna K. was separated from her husband B.K. and lived in Illinois. B.K. was then living with another romantic partner. The Ks were attempting to mediate their divorce.

¶76    On January 27, 2020, Attorney Gorokhovsky contacted Inna K. with a friend request on Facebook. He had previously represented Inna K.'s mother, and they had a mutual friend. Inna K. and Attorney Gorokhovsky exchanged several messages that day in which they discussed her divorce and her dissatisfaction with her current attorney.

¶77    On or about April 3, 2020, Inna K. contacted Attorney Gorokhovsky indicating that she was interested in hiring him to file her divorce action. Attorney Gorokhovsky informed Inna K. that while he was not licensed to practice law in Illinois, he could seek pro hoc vice admission for her case. He also told her he would need a $3,000 payment to begin the representation.

¶78    On or about April 9, 2020, Inna K. informed Attorney Gorokhovsky that she wanted to proceed with the divorce. He agreed to represent her and said he would charge her $150 per hour for legal work

and $75 per hour for travel. The written agreement provided that if B.K. paid Attorney Gorokhovsky's fees the charge would be $280 per hour for legal work and $200 per hour for travel.

¶79 On April 11, 2020, Inna K. traveled to Attorney Gorokhovsky's home in Mequon, Wisconsin, which he also used as his law office. Inna K. signed the fee agreement and gave Attorney Gorokhovsky a check for $3,000.

¶80 After this meeting, Attorney Gorokhovsky pursued a romantic relationship with Inna K. He told her that their mutual friend described him as "very sexy," discussed that because his Zodiac sign was "Leo," the same as Inna K.'s, he understood "why it was so easy with you," and he boasted that he goes for runs in Mequon and swims in Lake Michigan in the winter. On April 12, 2020, Attorney Gorokhovsky asked Inna K. several times to come over for dinner. On April 14, 2020, he wrote in a message to Inna K. time stamped 1:56 A.M., "I was not comfortable from the fact that you decided that those 8 women last year were clients . . . so I look like an asshole. I take money for work plus take a client in bed . . . ." On April 17, 2020, after Inna K. declined to talk on the phone because she had "a really bad headache," Attorney Gorokhovsky responded, "I can cure you . . . if you want. Here is a prescription: love, care, buns, pampering, bed rest . . . meat and lots of laugher . . . . do you want me to treat you . . . . I am a doctor . . . !!!" Attorney Gorokhovsky also called Inna K. several times inquiring about her dating life and suggesting that they should date.

¶81 On April 12, 2020, Attorney Gorokhovsky sent Inna K. a draft of a petition for dissolution of marriage. The petition included a "Third Party Claim" against the woman with whom B.K. was living at the time and sought compensation for "unjust enrichment." The petition and third party complaint were drafted as pro se filings. The petition had an endnote saying that Attorney Gorokhovsky had drafted the document and intended to seek pro hac vice admission.

¶82 The petition had a number of problems. It mentioned "minor children" and sought custody and child support for Inna K., despite the fact that the children were adults. The petition also contained a request for a jury trial, which was not available for divorce actions in Illinois. Attorney Gorokhovsky instructed Inna K. to file the petition as a pro se filing.

¶83    Attorney Gorokhovsky also sent Inna K. a draft pro hac vice motion and directed her to file it pro se. The motion did not comply with the procedure for pro hac vice admission in Illinois. On or about April 13, 2020, Inna K. attempted to file the divorce petition with the Lake County Clerk of Court. The clerk's filing system rejected the petition because it combined multiple filings submitted as one transaction.

¶84    On April 15, 2020, B.K. filed a petition for divorce against Inna K.

¶85    On April 15, 2020, Attorney Gorokhovsky deposited Inna K.'s $3,000 check into his trust account. Prior to that deposit, his trust account had a balance of $4.10. On April 16, 2020, Attorney Gorokhovsky withdrew $1,700 from his trust account via electronic transfer. During that month, he made other withdrawals via electronic transfers, totaling $3,800.

¶86    On April 16, 2020, B.K. came to Inna K.'s home with police to remove his possessions. After this, Inna K. expressed concern to Attorney Gorokhovsky over B.K.'s ownership of guns and ammunition. Attorney Gorokhovsky encouraged her to file a petition for an order of protection, which he assisted in drafting, and to file a police report against B.K. and his girlfriend for adultery.

¶87    On April 19, 2020, Inna K. went to the Mundelein Police Department and attempted to file a police report on the adultery. A police officer told Inna K. that the police would not investigate the allegation. While she was at the police department, Inna K. phoned Attorney Gorokhovsky, who asked her to put the officer on the phone. After speaking with the officer, Attorney Gorokhovsky told Inna K. "to go home, [and] that he will draft a document against Mundelein police."

¶88    On April 22, 2020, Inna K. filed a pro se petition for order of protection against B.K. The court held a hearing on the petition that same day, at which Attorney Gorokhovsky appeared as a "friend of the court." The court issued an emergency order of protection and scheduled a full evidentiary hearing for May 13, 2020.

¶89    On April 26, 2020, Attorney Gorokhovsky had dinner with Inna K. at her home in the Chicago area. Attorney Gorokhovsky made comments to Inna K. about wanting to start a new family with her. After dinner, while Inna K. was washing dishes, Attorney Gorokhovsky came up behind her and attempted to initiate a sexual encounter with her by trying

to pull her pants off and force himself on her. Inna K. rejected Attorney Gorokhovsky's physical advance and made him leave.

¶90    After the incident of unwanted physical contact, Attorney Gorokhovsky sent Inna K. numerous messages apologizing for his behavior but also lamenting the fact that she was not interested in a romantic relationship with him. He repeatedly said that he would continue the representation but also suggested that Inna K. fire him.

¶91    On April 28, 2020, Inna K. reiterated that she was not romantically interested in Attorney Gorokhovsky but wanted to have him continue the representation.

¶92    On or about April 29, 2020, Attorney Gorokhovsky finished drafting the federal civil rights complaint against the Mundelein Police Department and sent it to Inna K.

¶93    On April 30, 2020, Attorney Gorokhovsky emailed Inna K. a timesheet of his work on her behalf, indicating that she owed him $13,807.70. By that time, he had fully disbursed her initial $3,000 payment from his trust account. The timesheet included charges of $195 and $135 for messages exchanged with Inna K. on April 3 and 4 which informed her that his retainer was $3,000; charges of $7.50 each for 238 messages exchanged between April 6 and 11 prior to Inna K.'s signing of the fee agreement, for a total of $1,785; a charge of $390 for "drafting of AEA[2]/pdf file management"; and a charge of $145 for "Billing Management."

¶94    Inna K. informed Attorney Gorokhovsky that she did not want to proceed with the complaint against the Mundelein Police Department. On May 2, 2020, Attorney Gorokhovsky rebuked Inna K. for this decision, berated her for wasting his time, and sent her a series of messages calling her a bitch and telling her he was testing her with "psychological provocation" to decide if she was worth his time.

¶95    Inna K. hired Attorney Aurelia Fitzpatrick to represent her in the family actions. On May 4, 2020, Attorney Fitzpatrick emailed Attorney Gorokhovsky to inform him of the change of counsel. On June 15, 2020, Attorney Fitzpatrick wrote to Attorney Gorokhovsky asking that he refund

---

[2] Attorney Employment Agreement.

Inna K.'s $3,000 payment. On June 16, 2020, Attorney Gorokhovsky refused to refund Inna K.'s payment and claimed that she owed him an additional $13,385.20.

¶96    On March 2, 2021, the court finalized the Ks divorce. None of the documents which Attorney Gorokhovsky had prepared were used in the case.

¶97    On June 19, 2020, Inna K. filed a grievance against Attorney Gorokhovsky with OLR. On October 1, 2020, OLR wrote to Attorney Gorokhovsky requesting "copies of your trust account records confirming that you deposited and held [Inna K.'s] advanced fee in trust until earned," among other information and documents. On November 3, 2020, Attorney Gorokhovsky responded to OLR's request with "my IOLTA records for your review." The only documents which Attorney Gorokhovsky provided were bank statements for his trust account from January 3, 2020 through June 1, 2020.

¶98    The amended complaint alleged the following counts of misconduct with respect to Attorney Gorokhovsky's handling of Inna K.'s case:

> **Count Eight**: By undertaking and continuing the representation of a client when there was a significant risk that the representation would be materially limited by his own interest in pursuing a personal, intimate relationship with the client, Attorney Gorokhovsky violated SCR 20:1.7(a).
>
> **Count Nine**: By failing to hold Inna K.'s advance fee payment in trust until earned, Attorney Gorokhovsky violated SCR 20:1.5(f).
>
> **Count Ten**: By making electronic transfers from his trust account, Attorney Gorokhovsky violated SCR 20:1.15(f)(3).
>
> **Count Eleven**: By failing to provide Inna K. competent representation, including preparing inaccurate documents and encouraging her to pursue the issue of adultery, Attorney Gorokhovsky violated SCR 20:1.1.
>
> **Count Twelve**: By sending sexually suggestive and flirtatious messages to his client; pressuring her to initiate a sexual

relationship with him; by making a physical, sexual advance toward his client, and by sending messages berating his client when she spurned his advances, Attorney Gorokhovsky violated SCR 20:8.4(g) and SCR 40:15.

**Count Thirteen**: By failing to withdraw from the representation after sending sexually suggestive and flirtatious messages to his client, pressuring her to initiate a sexual relationship with him, and by making a physical, sexual advance toward his client, thereby creating a concurrent conflict of interest with his client, Attorney Gorokhovsky violated SCR 20:1.16(a)(1).

**Count Fourteen**: By charging his client a fee totaling over $16,000 for a representation that lasted three weeks and included charges for (a) time spent prior to his hiring, negotiating his fee, and preparing his fee agreement; (b) time spent on drafting a complaint outside the scope of his fee agreement alleging a doubtful injury; and (c) time spent on services that had no benefit to his client, Attorney Gorokhovsky violated SCR 20:1.5(a).

**Count Fifteen**: By failing to maintain and preserve complete trust account records, Attorney Gorokhovsky violated SCR 20:1.15(g)(1).

¶99 The final three counts of misconduct alleged in OLR's amended complaint arose out of Attorney Gorokhovsky's representation of D.M. in seven criminal matters that were pending in Waukesha and Milwaukee Counties. The SPD had appointed counsel for D.M. in each case except for one non-criminal traffic matter. Attorney Elizabeth Weathers represented D.M. in four cases pending in Waukesha County. Attorney Joseph Thomas Domask represented D.M. in two cases pending in Milwaukee County. All of D.M.'s Waukesha cases were assigned to the same judge, who managed them together.

¶100 D.M. sought new counsel through a lawyer referral service. On February 25, 2020, Attorney Gorokhovsky contacted D.M. after receiving the referral. On February 29, 2020, Attorney Gorokhovsky met with D.M. at a restaurant. D.M. agreed to hire Attorney Gorokhovsky to represent him in the Waukesha cases and paid him $2,500. On March 3, 2020, Attorney Gorokhovsky sent D.M. a written fee agreement for the

representation. The agreement stated it was for "the matter of <u>State v. [D.M.]</u>, Waukesha County Wisconsin," and did not distinguish or identify D.M.'s Waukesha cases. The fee agreement stated that Attorney Gorokhovsky would hold D.M.'s $2,500 payment in his trust account. Attorney Gorokhovsky never deposited D.M.'s $2,500 payment into his trust account. The fee agreement purported to give Attorney Gorokhovsky a "lien on client's records" and allowed him to charge D.M. for a copy of the file after the representation.

¶101   On March 16, 2020, Attorney Gorokhovsky filed notices of appearance and retainer in D.M.'s two Waukesha misdemeanor cases. He never filed notices of appearance in the Waukesha felony or traffic cases. On March 23, 2020, Attorney Gorokhovsky notified D.M. that he now officially represented him in the Waukesha matters.

¶102   On April 29, 2020, Attorney Gorokhovsky sent D.M. a time sheet with charges totaling $3,144.61. On the timesheet, Attorney Gorokhovsky charged .1 of an hour for each message exchanged with D.M., regardless of content or length of the message. By billing for messages in this way, Attorney Gorokhovsky was not charging on an hourly basis for actual time spent on substantive tasks. This method of billing inflated the amount of time charged for tasks.

¶103   Many of Attorney Gorokhovsky's charges on the timesheet were for routine, non-legal, office tasks such as confirming D.M.'s email address, noting missed calls, receiving an automated email confirming the e-filing of a document, and text messages as simple as "ok." Attorney Gorokhovsky included charges for clerical work such as opening a file, starting his time sheet, preparing his fee agreement, seeking payment, and "billing management."

¶104   On May 11, 2020, D.M. sent Attorney Gorokhovsky an email objecting to his billing, saying that Attorney Gorokhovsky had accomplished nothing on his cases. That same day, Attorney Gorokhovsky began drafting a motion to withdraw from D.M.'s cases.

¶105 During May 2020, the attorney-client relationship deteriorated as D.M. dealt with family issues, was slow to respond to Attorney Gorokhovsky, and continued to object to Attorney Gorokhovsky's billing.

¶106   On May 26, 2020, Attorney Gorokhovsky emailed D.M. that if he did not pay the bill by the end of the month and contact him, Attorney Gorokhovsky would withdraw from the representation.

¶107   On May 29, 2020, Attorney Gorokhovsky and D.M. met at a restaurant. D.M. paid Attorney Gorokhovsky $350 in cash. Attorney Gorokhovsky also requested that D.M. give him a post-dated check for $1,148, which D.M. did not do. In the next days, Attorney Gorohovsky repeated his requests for pre-payment, which D.M. declined.

¶108   On June 3, 2020, Attorney Gorokhovsky filed a motion to withdraw in D.M.'s case after making two failed attempts to file the motion earlier in the day. On June 9, 2020, Attorney Gorokhovsky sent D.M. another bill, offering to continue the representation if D.M. paid the balance due, which was unspecified. In the new bill, Attorney Gorokhovsky charged D.M. for the rejected attempts to file the June 3 motion to withdraw and for each of the calls to correct his errors, as well as for the refiling of the motion to withdraw. He also charged $100 on his time sheet for .5 hours for "file and billing management" occurring on the day of the bill. D.M. did not respond to the email.

¶109   On June 18, 2020, the court granted Attorney Gorokhovsky's motion to withdraw from D.M.'s misdemeanor cases. On June 19, 2020, Attorney Gorokhovsky emailed D.M. that the court had granted his motion to withdraw and sent a time sheet noting a balance due of $1,060.85. Attorney Gorokhovsky told D.M. that if he did not pay the bill by the end of the month, he would file a lawsuit to recover his fees. The June 19, 2020 timesheet incorrectly showed total charges of $5,105.46 and payments of $4,044.61, and indicated that Attorney Gorokhovsky had deposited D.M.'s initial payment in his trust account.

¶110   On July 2, 2020, D.M. filed a grievance against Attorney Gorokhovsky with OLR. Documents that Attorney Gorokhovsky sent to OLR Intake included bill/time sheets showing that the $2,500 was held in Attorney Gorokhovsky's IOLTA account.

¶111   On February 22, 2021, successor counsel resolved all of D.M's Waukesha criminal matters.

¶112   The amended complaint alleged the following counts of misconduct arising out of Attorney Gorokhovsky's representation of D.M.:

**Count Sixteen**: By failing to deposit and hold the $2,500 advance payment of fees he received from D.M. in trust as specified in his fee agreement, Attorney Gorokhovsky violated SCR 20:1.5(f).

**Count Seventeen**: By charging his client a fee totaling over $5,000 for representation in a criminal matter in which he performed little meaningful work to advance the matter, and made no court appearances, and included charges for (a) time spent prior to his hiring, negotiating his fee, and preparing his fee agreement, and (b) time spent on clerical tasks, Attorney Gorokhovsky violated SCR 20:1.5(a).

**Count Eighteen**: By misrepresenting through his fee agreement and in the bill/time sheet he sent to D.M. and to OLR Intake that the $2,500 advance fee would be deposited and was held in trust, Attorney Gorokhovsky violated SCR 20:8.4(c).

¶113   In his report, Referee Friedman noted that although Attorney Gorokhovsky's amended answer admitted the facts underlying Counts One, Two, and Four through Six, his "defense was a convoluted argument that while the facts alleged were true he was only acting pro se in these cases and that in such a situation there is a certain level of misbehavior or sanctionable conduct that is allowable to an attorney acting pro se and that the Wisconsin Rules of Professional Conduct are not intended to govern the personal conduct of attorneys in their personal litigation matters." Referee Friedman noted that in granting OLR judgment on the pleadings/summary judgment on those counts, Referee Kinney rejected those arguments, citing *In re Disciplinary Proceedings Against Nora*, 2020 WI 70, 393 Wis. 2d 359, 945 N.W.2d 559, and *In re Disciplinary Proceedings Against Bach*, 2016 WI 95, 372 Wis. 2d 187, 887 N.W.2d 335. Referee Friedman fully agreed with Referee's Kinney's rationale. He went on to say:

This Referee . . . believes that the conduct of Gorokhovsky in his personal litigation warrants revocation of his license before even considering the remaining matters. His conduct involved efforts to delay and obfuscate and cause other litigants significant expense and consumed valuable court time. As an example, in his tax case the court sanctioned him $17,581.60. Maintaining vexatious litigation is generally an effort to cause an adverse party to "give up" and pay some

money or drop claims in order to avoid ever increasing costs and harassment and uses up scarce resources which impact litigants in other litigation. This style of practice results in a denial of justice to other litigants and the Court should make it clear to Gorokhovsky and other attorneys that it will not be tolerated.

¶114   Referee Friedman also found that Attorney Gorokhovsky lied about the extent of his medical treatment in order to gain delays in pending litigation. The referee noted that on March 2, 2020, Attorney Gorokhovsky went to a hospital with chest pain. He stayed overnight, and a stent was put into his heart through catheterization. Attorney Gorokhovsky represented to federal courts that he had open heart surgery, and as a result of that claim was able to have the New York case reinstated. The referee noted that at the evidentiary hearing in this matter, Attorney Gorokhovsky testified that he did not know the difference between having a stent put into his heart and open heart surgery. The referee said, "Even if this were true, and it strains credulity, his claims of good faith are not a defense to violating SCR 20:8.4(c)" since that rule does not have an intent component.

¶115   With respect to the counts of misconduct arising out of Attorney Gorokhovsky's representation of Inna K. and Inna K.'s claims that Attorney Gorokhovsky tried to pursue a personal, romantic relationship with her and made inappropriate physical contact with her, the referee noted that Attorney Gorokhovsky testified that during a video call on the day he had dinner at Inna K.'s home, she was dressed in a provocative manner, leading him to believe that she was pursuing him. He claimed that he told Inna K. at that point that he wanted to withdraw from the representation. However, Attorney Gorokhovsky further testified that he went to Inna K.'s home and while he was there, she was sitting suggestively and after dinner she asked him to "get" her husband, which Attorney Gorokhovsky interpreted as a request to kill her husband. Attorney Gorokhovsky said this request caused him to abruptly leave Inna K.'s home. In spite of the fact that he had supposedly decided to stop the representation, Attorney Gorokhovsky continued with legal work for Inna K., including drafting documents. The referee also noted that Attorney Gorokhovsky admitted to calling Inna K. "something in Yiddish which means a pile of shit."

¶116 The referee noted that in her testimony at the evidentiary hearing,[3] Inna K. said she never intended to start a personal relationship with Attorney Gorokhovsky, and she had hired him to be a professional. She testified that Attorney Gorokhovsky had told her he was travelling to Chicago with his son to buy insulin, and she had invited him to her house for a meeting to discuss her case, but he called her last minute and said his son was not coming. Inna K. testified that at her house, Attorney Gorokhovsky told her he wanted to start a family with her, which disturbed her, and when she went to do dishes, he leaned over and hugged her, at which point she asked him to leave.

¶117 The referee said Attorney Gorokhovsky's personal feelings toward Inna K. conflicted with his professional duties, and SCR 20:1.7(a) required him to withdraw from the representation before it interfered with the attorney-client relationship. Instead, Attorney Gorokhovsky acted on his desires and continued to perform legal work for Inna K. for days after she asked him to leave her house. The referee said Attorney Gorokhovsky's work on Inna K.'s divorce was not competent, nor was his encouragement of Inna K. pursuing criminal charges against her husband's new girlfriend and then drafting a civil rights complaint against the Mundelein Police Department.

¶118 With respect to Attorney Gorokhovsky's representation of both Inna K. and D.M., the referee said Attorney Gorokhovsky overcharged for minimally effective work.

¶119 In discussing the appropriate sanction, the referee said:

---

[3] The referee granted OLR's motion to permit Inna K. to testify remotely pursuant to WIS. STAT. § 807.13(2). In support of its motion, OLR pointed out that Inna K. is an Illinois resident who is required to work from her home, and travelling to and from the hearing in Milwaukee would require her to spend several hours in travel. Inna K. had also represented to OLR a fear of seeing Attorney Gorokhovsky in person because he had made a physical, sexual advance to her during their attorney-client relationship. Attorney Gorokhovsky had objected to Inna K. being allowed to testify remotely because it would deny him the ability to confront his accuser. The referee noted that the hearing room would have the capability of having Inna K. appear by video conference on a large screen so that everyone would be able to see and hear her.

Gorokhovsky is a repeat subject of discipline . . . . He is an experienced practitioner of law who has a lengthy disciplinary history and committed the same types of misconduct for which he has been reprimanded and suspended in the past. He took advantage of [Inna K.], an unemployed woman for whom $3,000 was not easy to pay and provided incompetent legal work and unwanted romantic acts. His testimony at [the] hearing did not acknowledge any misconduct on his part, save for when he was confronted with definitive proof he did not make a bank deposit. Gorokhovsky is a serial offender who shows no understanding of the role of lawyers in the legal system, cannot be trusted and comfortably makes misrepresentations to courts, opposing counsel and clients.

¶120   The referee found that OLR had met its burden of proof as to all eighteen counts of misconduct alleged in the amended complaint. The referee said, "Gorokhovsky's misconduct is very clear, significant and voluminous. He is a serial violator as reflected by his past discipline that clearly made no impression on him." The referee recommended that Attorney Gorokhovsky's license to practice law in Wisconsin be revoked and that he be assessed the full costs of this proceeding. In addition, the referee recommended that Attorney Gorokhovsky be ordered to make restitution to Inna K. in the amount of $3,000 and to D.M. in the amount of $2,850.

¶121   Attorney Gorokhovsky has appealed. He argues that Referee Kinney erred in granting judgment in favor of OLR on Counts One, Two, and Four through Six, and he argues that Referee Friedman erred in finding that OLR had met its burden of proof on all of the other counts of misconduct. In addition, Attorney Gorokhovsky argues that Referee Friedman was biased against him, and that the referee erred in not requiring Inna K. to appear in person at the evidentiary hearing. He asserts that Referee Friedman erred in ordering restitution. Finally, Attorney Gorokhovsky argues that revocation of his license to practice law is not warranted and that a private or public reprimand would be an appropriate level of discipline.[4]

---

[4] In his reply brief, Attorney Gorokhovsky says a suspension of not more than 60 to 90 days would be appropriate.

¶122   Attorney Gorokhovsky asserts that the facts underlying the first seven counts of misconduct alleged in the amended complaint do not rise to the level of violations of the rules of professional conduct because in all of those matters he was acting as a pro se plaintiff, and none of those counts involve any allegations of misconduct while representing a client. Attorney Gorokhovsky says, "[I]t is obvious that by charging the Respondent . . . with certain alleged infraction [sic] purportedly committed by him while being pro see [sic] litigant . . . unduly burdens Respondent's constitutional right of unfettered access to the Court system to address and redress his personal grievances and unduly burdens his 1st amendment right of free speech." He argues that the Rules of Professional Conduct were not intended to address conduct of lawyers while they are acting as private litigants in their own civil litigation. In addition, Attorney Gorokhovsky says that he has already paid monetary sanctions imposed by the federal courts for some of the acts alleged in the amended complaint and "now OLR is attempting to execute the double punishment for the same offense for which the Respondent was already sanctioned."

¶123   Attorney Gorokhovsky argues that the referee erred in not requiring Inna K. to appear in person at the evidentiary hearing, and the referee further erred in limiting Attorney Gorokhovsky's questioning of Inna K. He says these acts "were totally prejudicial and deprived the Respondent of his right to confront [Inna K.] in open court and to cross examine her on her allegations."

¶124   Attorney Gorokhovsky challenges OLR's claim that he did not provide competent representation to Inna K. when drafting a petition for dissolution of her marriage because the draft contained some errors and typos. Attorney Gorokhovsky says OLR did not present testimony from any expert witness establishing that this preliminary draft was prepared incompetently by him. He says, "OLR counsel who never ever tried a divorce case neither in Wisconsin nor in Illinois cannot establish any violation of competency rule by him self." As a result, Attorney Gorokhovsky says this court should reject the referee's findings of fact on the issue of the competency rule violation as it pertains to Inna K.'s case.

¶125   Attorney Gorokhovsky says that when he cross-examined Inna K. at the evidentiary hearing about the alleged physical contact between them, she was very evasive as to what actually happened. He says:

> She vagally [sic] alluded that she was touched by Respondent
> during said meeting which was strongly denied by the

Respondent. He testified that [Inna K.] forced him to a shopping trip prior to meeting, was forcing him to buy clothing for her, was very suggestive and provocative with him. He testified that he absolutely did not touched [sic] her. She was asked on cross examination as to why she did not called [sic] the police if Respondent touched her. She declined to answer it.

¶126   Attorney Gorokhovsky takes issue with the referee's finding that Gorokhovsky misled the court on the issue of whether he had open heart surgery. He says labeling his procedure as "open hart [sic] surgery" and not "stunt [sic] infiltration surgery" is immaterial because it was a surgery regardless of the name attributed to it, and calling the procedure "open hart [sic] surgery" is de minimus at best. He says he "truthfully testified that it was innocent mistake on his part that he did not intended [sic] to mislead anyone."

¶127   Attorney Gorokhovsky argues that the referee erred in ordering that he pay restitution. He says he did a "plethora of work" for Inna K. and spent multiple hours communicating with her, reviewing documents she sent to him, reviewing thousands of text messages, spent an entire day at an in-court appearance, and spent many hours communicating with her and drafting various pleadings for her. He says Inna K.'s request for restitution is clearly vindictive because he withdrew from her case.

¶128   Attorney Gorokhovsky argues that revocation of his license is not warranted. He says he "did not committed [sic] any crimes, he did not stole [sic] any monies" and in fact Inna K. "ended up using for free a lot of Respondent's monies and time." He says he is "only guilty of serious errors in his judgment allowing his personal feelings [for Inna K.] to dominate his professional responsibilities." He says:

> In toto, this entire case infested with a lot substantive and procedural errors on the part of OLR. The Respondent was not afforded with meaningful right of confronting [Inna K.] in open court. He was very limited in any opportunity to cross examine her. She was very evasive and argumentative during cross examination and this Court allowed her to behave in this manner.

¶129   The OLR says the issues presented are whether it proved by clear, satisfactory, and convincing evidence that Attorney Gorokhovsky

engaged in 18 counts of misconduct; whether the referee erroneously exercised its discretion by permitting Inna K. to testify and limiting cross-examination; and what is the appropriate sanction for Attorney Gorokhovsky's misconduct.

¶130    The OLR says the record supports the referee's findings of fact that Attorney Gorokhovsky committed professional misconduct in his personal litigation, as alleged in counts one through seven of the amended complaint. It says this court has previously held that the Rules of Professional Conduct apply to an attorney who pursues a pattern of frivolous personal litigation. *See Bach, Nora.* The OLR also says that attorneys may face both sanctions imposed by a court and professional discipline for their acts because sanctions and professional discipline have different roles in the judicial system, and an attorney's behavior can subject him or her to both. *See, e.g., In re Disciplinary Proceedings Against Eisenberg*, 2010 WI 11, ¶¶15-52, 322 Wis. 2d 518, 778 N.W.2d 645.

¶131    As to Attorney Gorokhovsky's representation of Inna K., OLR says the record again supports the referee's findings of fact. OLR says while Attorney Gorokhovsky asks this court to override the referee's factual findings about his final meeting with Inna K. where he assaulted her, he has the burden to show that the referee's findings were clearly erroneous. In addition, OLR points out that the referee is the ultimate arbiter of witness credibility. *See In re Disciplinary Proceedings Against Pump*, 120 Wis. 2d 422, 426-27, 355 N.W.2d 248 (1984). The OLR says both Attorney Gorokhovsky and Inna K. testified about the meeting, and the referee found Inna K.'s testimony more credible than Attorney Gorokhovsky's.

¶132    With respect to Attorney Gorokhovsky's claim that OLR failed to prove he was not competent in his representation of Inna K. because it did not present expert testimony, OLR says the referee did not need an expert to conclude that it was not competent to draft a divorce petition that included nonexistent minor children; demanding a jury trial for the divorce; encouraging Inna K. to pursue criminal charges for adultery against her husband's girlfriend; and drafting an unrequested civil rights complaint against the Mundelein Police Department.

¶133    The OLR says the referee acted within his discretion in allowing Inna K. to testify remotely and in limiting the scope of Attorney Gorokhovsky's cross-examination of her. The OLR notes that this court reviews these determinations under an erroneous exercise of discretion standard. *See In re Disciplinary Proceedings Against Nunnery*, 2011 WI 39, ¶11,

334 Wis. 2d 1, 798 N.W.2d 239. The OLR notes that referees have the powers of a circuit court judge in handling the disciplinary proceedings before them, *see* SCR 22.16(1), and under WIS. STAT. § 807.13(2) a referee can allow remote testimony for good cause. The OLR says it established good cause for allowing Inna K. to appear remotely. The OLR also says the referee properly limited cross-examination of Inna K. because Attorney Gorokhovsky repeatedly pursued facts unrelated to the misconduct allegations and repeatedly pursued lines of questioning that Inna K. had already denied or said she did not recall. The OLR says Attorney Gorokhovsky had an opportunity to cross-examine Inna K. "but squandered it by asking irrelevant questions such as who her current employer was and bickering with the referee."

¶134 The OLR says the referee appropriately concluded that Attorney Gorokhovsky misrepresented his medical conditions and treatment in order to avoid complying with court rules and orders. OLR also argues that the referee did not err in recommending that Attorney Gorokhovsky pay restitution, and OLR says the referee properly considered the relevant factors and precedent in recommending the revocation of Attorney Gorokhovsky's license to practice law.

¶135 Attorney Gorokhovsky's reply brief largely rehashes the arguments made in his opening brief.

¶136 A referee's findings of fact will not be set aside unless clearly erroneous. Conclusions of law are reviewed de novo. *See In re Disciplinary Proceedings Against Eisenberg*, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. This court is free to impose whatever discipline it deems appropriate, regardless of the referee's recommendation. *See In re Disciplinary Proceedings Against Widule*, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686. Upon careful review of the matter, we adopt the referee's findings of fact and agree with the referee's conclusions of law that Attorney Gorokhovsky committed all eighteen counts of misconduct alleged in the amended complaint.

¶137 In determining an appropriate sanction for an attorney who has engaged in misconduct, we must consider the seriousness of the misconduct, as well as the need to protect the public, courts, and legal system from repetition of misconduct and to deter attorneys from engaging in similar misconduct. *See In re Disciplinary Proceedings Against Arthur*, 2005 WI 40, ¶78, 279 Wis. 2d 583, 694 N.W.2d 910.

¶138 Attorney Gorokhovsky's misconduct was serious and pervasive. He provided sub-par legal representation to Inna K. and D.M. He repeatedly showed an inability to comply with court rules and on multiple occasions lied to courts, opposing counsel, and his clients. On one occasion the Seventh Circuit deemed him "marginally competent," and on another occasion referred to his "dishonest and incompetent practice of law." He repeatedly sought extensions of time and attempted to excuse his many legal mistakes by claiming a series of health problems, while at the same time he was taking on new clients and making court appearances in other matters.[5]

¶139 The eighteen counts of misconduct at issue here include violations of numerous supreme court rules running the gamut from knowingly making false statements to a tribunal to engaging in conduct involving dishonesty, fraud, deceit or misrepresentation to failing to provide competent representation to a client to violating the attorney's oath and failing to abstain from all offensive personality. Attorney Gorokhovsky's conduct with respect to Inna K. was particularly reprehensible. In addition to providing Inna K. with incompetent legal representation, Attorney Gorokhovsky pressured Inna K. to engage in a sexual relationship with him while he was acting as her attorney—which constituted a conflict of interest—and, when she rejected his advances, he sent her nasty messages and claimed that in addition to the $3,000 she had already paid him, she owed many thousands of dollars more.

¶140 Due to the egregious nature of Attorney Gorokhovsky's misconduct, we agree with the referee that revocation of his license to practice law is the appropriate sanction. Attorney Gorokhovsky engaged in a clear pattern of misconduct and evinced a complete disregard of his obligations as an attorney.

¶141 While no two disciplinary matters are identical, our past precedent supports our decision to revoke Attorney Gorokhovsky's license to practice law. For example, in *In re Disciplinary Proceedings Against Sweeney*, 2019 WI 13, 385 Wis. 2d 407, 922 N.W.2d 850, we revoked the license of an attorney for misconduct that included multiple violations of

---

[5] Attorney Gorokhovsky continued his practice of seeking extensions of time to file his appellate briefs in this court by claiming continued ill health, thereby delaying the resolution of this matter by well over a year.

SCR 20:8.4(c). The attorney had no prior disciplinary history. In *In re Disciplinary Proceedings Against Eisenberg*, 2010 WI 11, 322 Wis. 2d 518, 778 N.W.2d 645, we revoked the license of an attorney with a long disciplinary history for multiple counts of misconduct that included pursuing a frivolous action merely to harass or maliciously injure the opposing party; engaging in a pattern of delays and requests for adjournment; and showing little or no remorse for his misconduct. Any sanction short of revocation would unduly depreciate the seriousness of Attorney Gorokhovsky's misconduct.

¶142   Finally, we agree with the referee that Attorney Gorokhovsky should be required to make restitution to Inna K. in the amount of $3,000 and to D.M. in the amount of $2,850 and that he should be required to pay the full costs of this proceeding.

¶143   IT IS ORDERED that the license of Vladimir M. Gorokhovsky to practice law in Wisconsin is revoked, effective April 16, 2025.

¶144   IT IS FURTHER ORDERED that within sixty days of the date of this order Vladimir M. Gorokhovsky shall pay restitution in the amount of $3,000 to Inna K. and $2,850 to D.M.

¶145   IT IS FURTHER ORDERED that within six months of the date of this order, Vladimir M. Gorokhovsky shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $14,358.

¶146   IT IS FURTHER ORDERED that payment of restitution is to be completed prior to paying costs to the Office of Lawyer Regulation.

¶147   IT IS FURTHER ORDERED that Vladimir M. Gorokhovsky shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been revoked.

ANNETTE KINGSLAND ZIEGLER, C.J., with whom REBECCA GRASSL BRADLEY, BRIAN HAGEDORN, and JILL J. KAROFSKY, JJ., join, concurring.

¶148 I concur in the court's order revoking Attorney Gorokhovsky's license to practice law in Wisconsin. I write separately to point out that in Wisconsin the "revocation" of an attorney's law license is not truly revocation because the attorney may petition for reinstatement after a period of five years. *See* SCR 22.29(2). I believe that when it comes to lawyer discipline, courts should say what they mean and mean what they say. We should not be creating false perceptions to both the public and to the lawyer seeking to practice law again. *See In re Disciplinary Proceedings Against Moodie*, 2020 WI 39, 391 Wis. 2d 196, 942 N.W.2d 302 (Ziegler, J., dissenting). And, as I stated in my dissent to this court's order denying Rule Petition 19-10, *In the Matter of Amending Supreme Court Rules Pertaining to Permanent Revocation of a License to Practice Law in Attorney Disciplinary Proceedings*, I believe there may be rare and unusual cases that would warrant the permanent revocation of an attorney's license to practice law. *See* S. Ct. Order 19-10 (issued Dec. 18, 2019) (Ziegler, J., dissenting).

¶149  For the foregoing reason, I concur.